FLORENCE L. RICHMOND *vs.* SAMUEL KETTELLE, T. T.
PHŒBE L. RICHMOND *vs.* SAMUEL KETTELLE, T. T.
RUTHERFORD B. H. RICHMOND *vs.* SAMUEL KETTELLE, T. T.

APRIL 25, 1919.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Stearns, JJ.

*(1)  Judgment Against Town.   Liability of Town Treasurer.*

Under Gen. Laws, 1909, cap. 46, §§ 12, 13, 14, relative to the satisfaction of a judgment against a town or city, a town or city treasurer is not personally responsible or primarily liable to pay the judgment in the first instance. *Barber* v. *Barber*, 32 R. I. 266, so far as inconsistent with the foregoing but not otherwise, overruled.

*(2)  Judgment Against Town.   Liability of Town Treasurer.*

While a town is required to be sued by an action against the town treasurer in his official capacity, such suit is in substance and legal effect a suit against the town and the judgment is as much a judgment against the town as if it

were required that the suit be brought against the town in its corporate capacity and name.

*(3)   Judgment Against Town Treasurer.   Executions.*

A judgment against a town treasurer cannot be collected by execution as there is no requirement or provision of law for the issue or service or return of execution in such a case.

*(4)   Judgment Against Town Treasurer.   Mandamus.*

Mandamus is the only proceeding by which a judgment against a town treasurer may be enforced either against the town treasurer or against the town.   The writ of mandamus in such case is in the nature of the statutory writ of execution and is legally equivalent thereto.

*(5)   Judgment Against Town Treasurer.   Successor in Office.*

After a suit against a town treasurer in his capacity as such has proceeded to judgment, it is not necessary to summon in his successor in office within one year in order to keep the judgment alive in case the town treasurer against whom the judgment was rendered ceases to hold office and a successor is elected and qualified before the judgment is paid, but a judgment against a town treasurer is equally binding against his successor in office by reason of his representative capacity in succession to the town treasurer against whom the judgment was rendered and in privity with him, and mandamus properly lies against him to compel action to provide for payment of the judgment.

*(6)   Mandamus.   Judgment Against Town Treasurer.*

While mandamus properly lies against a town treasurer to enforce settlement of a judgment either by the town treasurer or the town, the fact that the town treasurer has not sufficient funds in his hands to satisfy and pay the judgment affects the nature of the relief which should be asked and granted and such being shown to be the fact the relief sought should be action by the town treasurer under Gen. Laws, 1909, cap. 46, § 13, so that a tax should be levied.

MANDAMUS.   Heard on appeal from Superior Court and petitioners granted relief on amendment of petition prior to entry of order.

PARKHURST, C. J.   These are three several petitions for mandamus to compel the respondent town treasurer to pay certain judgments held by petitioners, and are in all respects identical except as to the names of the petitioners and the amount of their respective claims.   The prayers of the petitions were granted in the Superior Court in the county of Kent, orders being entered therein on the twelfth day of September, 1918, that writs of mandamus issue commanding

the respondent to pay the judgments; and appeals therefrom to this court were taken by the respondent.

The facts appearing on record, by admission of the parties are substantially as follows: The petitioners, on the 30th day of October, 1912, obtained judgments of the Superior Court in the county of Kent against John E. Cole, then Town Treasurer of the town of West Greenwich; Florence L. Richmond for the sum of $545.37 debt and costs of suit taxed at $9.25; Phœbe L. Richmond for the sum of $605.11 debt and costs of suit taxed at $9.25; and Rutherford B. H˙ Richmond for the sum of $1,090.68 debt and costs of suit taxed at $9.25. John E. Cole, Town Treasurer as aforesaid, never paid or satisfied said judgments, or either of them, or any part thereof, during his continuance in office, although demand was made upon him at different times by the attorney of said judgment creditors.

On the third day of November, 1914, said John E. Cole ceased to be town treasurer of said town and was succeeded in that office by Samuel Kettelle, the respondent in these cases, who was duly elected town treasurer of said town of West Greenwich on the date last aforesaid and soon thereafter duly qualified as such town treasurer. Said Samuel Kettelle as such town treasurer has never paid said judgments, or either of them, or any part thereof, although repeated demands have been made upon him by the petitioners through their attorney.

The petitions for mandamus in these cases were all filed in the office of the clerk of said Superior Court in Kent County on October 22, 1917, and citations to the respondent were ordered to be issued on the same day by the justice then holding the session of said court. Said citations were made returnable October 31, 1917, were duly served and returned to said court.

On November 8, 1917, counsel for respondent filed a demurrer and answer in each case as follows:

*Respondents' Demurrer.*

And now comes the respondent, Samuel Kettelle, as Town Treasurer and demurs to the petitioner's said petition, and for causes of demurrer states:—

1. It does not appear in and by said petition that the petitioner has ever taken out execution upon said judgment.

2. Or that said petitioner has ever caused an execution, based upon said judgment, to be served upon the said John E. Cole as Town Treasurer or upon the present Town Treasurer, this respondent.

3. It does not appear in and by said petition that the petitioner has kept said judgment alive by summoning in this respondent as successor to the said John E. Cole as Town Treasurer.

4. It does not appear in and by said petition that this respondent has ever been made a party of record in the cause in which said judgment was rendered.

Wherefore the respondent prays judgment and that the petition may be dismissed.

*Answer of the Respondent.*

And now comes the respondent, Samuel Kettelle, as Town Treasurer of the Town of West Greenwich, not waiving his foregoing demurrer but insisting thereupon, in the event of said demurrer being overruled makes answer to said petition as follows:

FIRST. He is wholly unable to pay said judgment for the reason that he has no funds in his hands as Town Treasurer with which to make such payment.

SECOND. Said judgment has lapsed and become unenforceable against the Town of West Greenwich or against the Town Treasurer thereof because the petitioner has failed to summon in this respondent as successor to the said John E. Cole, as party defendant to said judgment.

All of which matters and things this respondent is ready to aver, maintain and prove as this Honorable Court may

direct, and prays to be hence dismissed with reasonable cost and charges.

On December 19, 1917, counsel for petitioners filed a motion and demurrer in each case, as follows:

### Petitioner's Motion.

And now comes the petitioner in the above entitled case and moves that the demurrer of the respondent be overruled and dismissed, for that:

1.   There is no provision known to the law for issuing an execution against a town or municipal corporation in this State.

2.   There is no provision in law for issuing an execution against a town treasurer in this State.   The statute provides the mode of paying judgments against town treasurers and that mode is exclusive of other methods.

3.   The provisions of the statute in relation to summoning in the successor of a town treasurer who has ceased to hold the office, applies only to pending suits and not to cases which have been prosecuted to judgment.

4.   Samuel Kettelle as the successor of the said John E. Cole is in privity with said Cole, and is legally bound to pay the judgment obtained by the petitioner against said Cole as town treasurer.   A judgment against a town treasurer is virtually a judgment against the town, and binds his successors in said office until paid.

### Petitioner's Demurrer.

And as to the answer of said respondent by him above pleaded, the said petitioner comes and demurs thereto and for causes of demurrer, says:

1.   That in case said respondent has no funds in his hands as town treasurer with which to pay and satisfy said judgment, the statute provides a speedy method by which he can secure adequate funds for the payment of the same.

2.   There is no provision of law which requires a judgment creditor of a town in this State to summon into court a

successor of the town treasurer against whom the judgment was rendered, in order to keep said judgment alive. Each and every town treasurer when elected and qualified takes the office with all the liabilities with which it is burdened.

It is admitted by agreement on file that the statements in the respective pleadings are true so far as they purport to be statements of fact; one of these facts to which attention is particularly called is the statement in the answer of the respondent Kettelle "that he has no funds in his hands as Town Treasurer with which to make such payment" (*i. e.*, payment of these judgments). It also appears that said Kettelle was duly elected and qualified as Town Treasurer of West Greenwich in November, 1914, as successor to John E. Cole, and remained such Town Treasurer at the time of filing these petitions and continuously thereafter to the entry of the judgments (Sept. 12, 1918) and thereafter, pending these appeals in this court, at the time of hearing on March 10, 1919.

Before taking up in detail certain particular questions argued by counsel in the case at bar, it will be useful to take a glance at the early Colonial and State Laws bearing upon suits to recover moneys due from towns. The earliest act which we have found appears in a compilation or digest of "Laws and Acts of Her Majesties Colony of Rhode Island," &c. (1636 to 1705) printed by Sidney S. Rider and Burnett Rider in 1896; in this volume there appears on page 50 of the reproduced manuscript laws, and on page (26) of the printed portion, the following act, viz.: "The Town Treasurer to be arrested for any Debt due from the Town.

*It is Further Enacted* & Ordered y$^t$ it Shall be Lawfull for any Plaintiff Against any town in this Colony in any Actionable Case to Arrest y$^e$ Town treasurer who being Arrested Shall Consult w$^{th}$ y$^e$ Town's or Town Coun$^{ll}$ whether to Compound or Stand out y$^e$ Suit & he Shall demand of y$^e$ town a rate to repay his Charges & disbursements & if he can not attain a Rate he Shall by vertue of

this ord^er have pow^er to Arrest to y^e Gener^ll Court of Tryalls any of the Obstructers of s^d Rate whom he Please."

This act appears to have been passed at Portsmouth session of August, 1659; see 1 R. I. Col. Rec., p. 419, p. 424.

It appears, however, that the above quoted act did not remain long in force, for we find that at a session of the General Assembly held in Newport, October 31, 1677, a much more comprehensive act relating to recovery of debts due from towns was passed, which seems to have superseded the act above quoted (which act we do not find reprinted in any of the subsequent compilations or digests). The act of 1677 is as follows, viz.: "An Act to Enable private Persons to Recover their Debts due from any Town by Action, against the Town Treasurer.

"Be it Enacted by the General Assembly, and by the Authority of the same, That all Persons whatsoever, That shall have any Money due to him or them, from any Town in this Colony, for any matter, cause or thing whatsoever, shall take the following Method for the obtaining of the same, (to wit) such person or persons, shall Present to the Town Meeting, a particular Account, of such Debt or Money due, and how Contracted; which being done in Case Just, and due satisfaction is not made him or them by the Town Treasurer of such Town, within one Months time after such account be given in as aforesaid, that then it shall be Lawful for such person or persons, to Commence his or their Action against such Town Treasurer, for the recovery of the same, and upon Judgment Obtained for such Debt or Money due, in Case the Town Treasurer shall not have sufficient of the Towns Money in his hands, to satisfy and pay the Judgment Obtained against him, and the charges expended in defending such Suit; That then upon Application made by such Town Treasurer, to any one Assistant, Justice of the Peace or Warden of such Town, such Assistant, Justice or Warden, shall grant forth a Warrant, to the Town Sergeant of such Town, Requiring him to Warn the Inhabitants of such Town, to hold a Town Meeting, at such time and place

as shall be Appointed, for the speedy ordering and making a Rate, to be Collected for the Reimbursement of such Town Treasurer; And in Case such Town upon due Warning given them, shall not take due, speedy, and effectual care to Reimburse, Pay, or Satisfy such Town Treasurer such Moneys, Costs and Charges by him Expended or Recovered against him; That then upon· Information or Complaint thereof by him made, to the next General Assembly of this Colony, such order shall be given therein, for the said Treasurers Reimbursement, with allowance for all incident costs, charges and trouble occasioned thereby; and such Town shall be Fined, at the Discretion of the said General Assembly." See Pub. Laws of R. I. 1719 (Riders' Reprint 1895) p. 29.

This act, in substance, with certain unimportant verbal changes, appears in various compilations and digests printed since 1677 (Pub. Laws, R. I. 1730, p. 24); 1744, p. 16; 1767, p. 262), and has been in substance reënacted, with certain changes not affecting the purpose and scope of the act, in all subsequent revisions of our laws. There also appears in a volume of laws entitled "Rhode Island Acts and Resolves—February, 1783 to October, 1785," the following resolution, which appears to have been adopted at Newport, June, 1783, p. 34, viz.: "It is Voted and Resolved, That on all Judgments which may hereafter be obtained against any Town-Treasurer in this State, on any Notes or other Securities given by him in his said Capacity, Execution shall issue against the Town-Treasurer for the Time being."

This resolution does not reappear in the first revision and digest of the laws of this State which was adopted in 1798, next hereinafter referred to, and is taken to be included within the repealing clause.

After the Declaration of Independence and the adoption of the Constitution of the United States with several amendments thereto, the Colony of Rhode Island and Providence Plantations, having become the State of Rhode Island and

Providence Plantations, the General Assembly at its January Session, 1798, enacted and established a Digest of Laws since known as the Public Laws of Rhode Island of 1798. In the first act printed in this digest, the General Assembly provided for the adoption, printing and promulgation of the laws, and in Section 4, page 77, provided "that the acts and laws contained in the said digest" . . . "shall, and hereby are declared to be, the public statute laws of this State, and that all other public statute laws, heretofore made and published, which are not contained in the said digest, shall be and hereby are declared to be repealed," with the usual saving clause as to accrued or vested rights, pending suits, criminal process, etc.

In this Digest of 1798 (p. 330), the law hereinabove quoted as enacted in 1677, entitled "An Act to Enable private Persons to recover their Debts due from any Town by Action, against the Town Treasurer," was substantially reënacted and appears as Section 12 of a chapter entitled "An Act declaring Towns to be Bodies corporate, establishing Town-Councils, regulating Town-Meetings, and prescribing the Manner of recovering Debts due from Towns."

"Sec. 12. *And be it further enacted*, That all persons who shall have any money due to him or them from any town in this State, or any demand against such town, for any matter, cause or thing whatever, shall take the following method to obtain the same, to wit: Such person or persons shall present to the freemen of said town, when legally assembled in town-meeting, a particular account of his or their debt or demand, and how contracted; which being done, in case just and due satisfaction is not made him or them, by the Town-Treasurer of such town, within one month after the presentment of such debt or demand as aforesaid, that then it shall be lawful for such person or persons to commence his or their action against such Town-Treasurer, for the recovery of the same; and upon judgment obtained for such debt or demand, in case the Town-Treasurer shall not have sufficient of the town's money in his hands to satisfy and

pay the judgment obtained against him, and the charges expended in defending such suit, that then, upon application made by such Town-Treasurer to any Justice of the Peace or Warden of such town, such Justice or Warden shall grant forth a warrant to the Town-Sergeant of such town, requiring him to warn the inhabitants of such town to hold a town-meeting, at such time and place as shall be appointed, for the speedy ordering and making a rate to be collected for the reimbursement of such Town-Treasurer; and in case such town, upon due warning given them, shall not take due and effectual care to reimburse, pay or satisfy such Town-Treasurer such monies, costs and charges, by him expended or recovered against him, that then, upon information or complaint thereof by him made to the next General Assembly to be holden within the State, such order shall be given therein for the said Treasurer's reimbursement, with allowance for all incidental costs, charges and trouble occasioned thereby; and such town shall be fined at the discretion of the General Assembly."

Similar provisions, substantially reënacting the last quoted statute, appear in all subsequent revisions of our laws down to the present time, with certain changes of procedure, as to the presentation of claims or demands to town councils instead of to town meetings (Rev. Stat. 1857, p. 91); and in case the town authorities after judgment against the town treasurer, fail to levy and collect a tax to "reimburse, pay or satisfy the town treasurer, the money, costs and charges by him expended, *or recovered against him,*" instead of application for relief to the General Assembly, as provided in all of the acts down to the General Statutes of Rhode Island, 1872, it was then provided that the town treasurer or the creditor might apply for relief to the Supreme Court and the court might order the town assessors to levy a tax to pay the judgment and costs, charges and expenses. (See Gen. Stat. R. I. (1872) Chap. 31, §§ 11, 12, 13, p. 89).

The same law in substance appears in all subsequent revisions, and in Gen. Laws of R. I. (1909), which was in

force when these judgments were obtained, and has ever since remained in force; the law in this regard is as follows: (Gen. Laws, R. I. (1909) Chap. 46, §§ 12, 13, 14.)

"Sec. 12.  Every person who shall have any money due him from any town or city, or any claim or demand against any town or city, for any matter, cause or thing whatsoever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, or to the city council of the city, a particular account of his claim, debt, damages or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him by the town or city treasurer of such town or city within forty days after the presentment of such claim, debt, damages or demand aforesaid, such person may commence his action against such treasurer for the recovery of the same.

"Sec. 13.  On judgment being obtained for such debt, damages or demand, in case said treasurer shall not have sufficient of the money of such town or city in his hands to satisfy and pay the judgment obtained and the charges expended in defending such suit, the said treasurer shall make application to any justice of the peace in such town or city, and thereupon the justice shall grant a warrant to the town sergeant of such town, requiring him to warn the electors of the town to hold a town meeting, at such time and place as shall be appointed, or to the mayor of such city requiring him to call a special meeting of the city council of such city, for the speedy ordering and making a tax, to be collected for the reimbursement of said treasurer.

"Sec. 14.  In case said electors, or said city council, as the case may be, upon due warning given them, shall not take due and effectual care to reimburse, pay or satisfy said treasurer the money, costs and charges by him expended, or recovered against him, upon petition, in the nature of a petition in equity, by him or by the person recovering the judgment named in section thirteen of this chapter, made to the superior court at any time thereafter, setting forth the

facts, the court may order the assessors of said town or city to assess upon the ratable property thereof, and the collector to collect, a tax sufficient for the payment of said judgment, with all incidental costs and charges, and the expense of assessing and collecting such tax."

In comparing these several enactments, reënactments and revisions of the law, certain things should be noted; premising that in all of them beginning with 1798, the first section of the act enacts "that the inhabitants of each town within this State are hereby declared to be a body politic and corporate" and may sue and defend actions, etc. (See Pub. Laws, R. I. 1798, p. 326); or as expressed in Gen. Laws, R. I. (1909), p. 217, "Section 1. The inhabitants of every town shall continue to be a body corporate, and may, in their corporate name, sue and be sued, prosecute and defend, in any court and elsewhere."

It should be noted that in all these acts the subject of suit is for "money due" from a *town* or *city*, or for "any claim or demand against any *town* or *city*"; the suitor "*shall* take the following method to obtain the same"; and then follows the procedure of presenting the claim, the time limit after which action may be commenced against the treasurer; and after judgment in favor of the plaintiff, the law plainly implies that the treasurer is to pay the judgment out of town or city money if he has enough, and if not, then his duty is to proceed and procure the levy of a tax to pay it; and if that fail, then he or the creditor may apply to the court for relief. At least since 1798, when the ancient laws above quoted permitting arrest of town treasurers in actions for debts due from towns, (1659) and requiring executions to issue against a town treasurer on judgment on notes or other securities given by him in his said capacity (1783), were repealed, and substantially the present method of procedure was enacted as the exclusive method, we find nothing in the statute which implies that the treasurer is to be held to be personally responsible or primarily liable to pay the judgment in the first instance out of his own

pocket. It is nowhere so stated in express terms. The method laid down "*shall*" be followed; and the only reasonable construction of the act, in view of the previous history of the legislation, is that, although in ancient times by means of arrest and execution, the law may for a few years have intended to hold the town treasurer as a sort of legal hostage for the payment of town debts, even then it was intended that the town should pay them out of its treasury, if there was enough money therein, or should levy a special tax to pay them. The only implication we can indulge, as to the payment of judgments by a town treasurer out of his own money, under the law as it has stood since 1798, is that he *may* pay if he so chooses, as he may find it convenient to do, if the amounts are small, or if for any reason he sees fit to do so; and that then he would be entitled to be reimbursed, as provided, by means of a tax, and would not be deemed to be in the situation a volunteer, who having paid the debt of another without authority or consideration is held to be unable to recover.

In the case of *Barber* v. *Barber*, 32 R. I. 266, this court on page 278, *et seq.*, gave some attention to the matter above referred to and came to the conclusion that the statutes "seem to impose the primary liability to pay the judgment" . . . "upon the town treasurer"; but in the case at bar, after carefully reconsidering the question, we are of the opinion that too much stress was laid upon the words "reimburse" and "reimbursement," and upon the effect of the statute of 1659 allowing arrest of town treasurers; it is to be noted that although the words "reimburse" and "reimbursement" have been used in all the statutes above quoted, for more than two hundred and fifty years, there are also used in the latter part of the act of 1677 the words, "And in Case such Town upon due Warning given them, shall not take due, speedy, and effectual care to Reimburse, Pay, or Satisfy such Town Treasurer such Moneys, Costs and Charges by him Expended or *Recovered against* him"; then upon information, the General Assembly shall give him relief. These latter words taken in con-

nection with the earlier words in the same act, "and upon Judgment Obtained for such Debt or Money due, in Case the Town Treasurer shall not have sufficient of the Towns Money in his hands," which have appeared in substance in all these acts ever since 1677, plainly imply, in our opinion, that it is the duty of the treasurer to pay a judgment out of the money in the treasury, if he have enough, that if he have not enough it is his duty to proceed for the levy of a tax to pay the judgment, &c. as provided; and that there is no implication that at any time or in any event is the treasurer personally liable or *bound*, to pay any such judgment out of his own funds. So far as the judgment in *Barber* v. *Barber*, *supra*, is inconsistent with the foregoing the same is hereby overruled; but we do not intend to impugn that judgment otherwise, as in our opinion it is fully justified by other considerations set forth in the opinion.

(2) It is quite plain from the above consideration, that a town being a body corporate and liable to be sued, in such cases as the case at bar, is required to be sued in a certain manner for the recovery of "money due," or of "any claim or demand," to wit, by a suit against the town treasurer in his official capacity; that such suit is in substance and legal effect a suit against the town, and that the judgment in such suit is as much a judgment against the town as if it were required that the suit be brought against the town in its corporate capacity and name, with provision for service of the writ upon the treasurer as its chief financial officer and representative, as is so frequently done in the case of other corporations of all kinds, it being obvious in all these cases that the only practicable method of service must be upon a representative. (See *Saunders* v. *Pendleton*, *T. T.*, 19 R. I. 659.)

Having in mind these general considerations, we now proceed to the discussion of the particular questions, substantially raised upon the pleadings and statements of fact in the cases at bar, as follows:

1.   Can a judgment against a town treasurer in this State be collected by execution?

2.   Is mandamus the proper proceeding to compel payment of such judgment?

3.   After a suit against a town treasurer in his capacity as such has proceeded to judgment, is it necessary to summon in his successor in office within one year, in order to keep the judgment alive, in case the town treasurer against whom the judgment was rendered ceases to hold office and a successor is elected and qualified before the judgment is paid?

4.   Is the answer of the respondent that he has no funds in his hands with which to pay and satisfy said judgment any bar to the granting of mandamus against him, when the statute, Section 13, Chapter 46 of the General Laws (1909), provides a method by which he may and shall proceed to raise money to pay said judgment?

Our answer to question 1 is in the negative.   There is no provision of our law for the issue or service of execution in cases of this sort.   *Barber* v. *Barber*, 32 R. I. 266, 279, *et seq.*   See also 2 Black on Judgments (2nd Ed.) § 985 a, *infra.*   It may be, as stated in argument by counsel for the respondent, that the issue of such an execution is a common practice, and that such an execution furnishes a convenient method of demand and notice to the treasurer to pay the judgment including costs, as well as a convenient paper to return to court for entry, in case it is paid and satisfaction is indorsed thereon by the plaintiff's attorney, so as to form a sort of official record of payment; but there is no requirement or provision of law for either the issue or service or return of such an execution, since there is no property of the town subject to the lien of such execution, and the treasurer's property is not subject thereto.   The fact that execution upon the judgments set forth in these petitions has never been issued is quite immaterial.

Our answer to question 2 is in the affirmative.   It is plain from the provision of law above quoted that mandamus is the only proceeding by which such judgment may be en-

forced either against the town treasurer or against the town. If the treasurer has enough of the town's money in his hands to pay the judgment, it is plainly implied that as a matter of course, he shall pay the judgment out of that money, and in that case mandamus is an appropriate remedy to compel such payment by him. If, as in the case at bar, the treasurer has no money of the town in his hands to pay the judgments, then it is equally plain that it is his duty to proceed to procure the levy of a tax to provide for such payment. The writ of mandamus, as thus employed, is in the nature of the statutory writ of execution, and is legally equivalent thereto. The law applicable to both questions 1 and 2 is well stated in 2 Black on Judgments, § 985 a, as follows: "As a general rule, the property of a municipal corporation necessary to the exercise of its functions, such as markets, prisons, town halls, etc., or property which has been destined and set apart by statute as a source of permanent revenue for the corporation, cannot be seized or sold on execution against it. Nor can its taxes or public revenues be levied on under an execution in favor of a private creditor. And in several of the states, it is now well settled that the writ of execution cannot be employed at all when the judgment debtor is a municipality. In these circumstances, the legal method of enforcing the payment of a judgment against a municipal corporation is by a writ of mandamus, issuing from a court of competent jurisdiction, and based on proper proceedings, commanding the officers of the corporation to pay the judgment out of public funds in their hands, or to levy and collect taxes sufficient in amount to discharge the obligation. The writ, as thus employed, is in the nature of the statutory writ of execution and is legally equivalent thereto. Accordingly, we find numerous decisions recognizing the power of the courts of a state to issue the writ of mandamus to compel the payment of judgments recovered against the municipal corporations of the State, either in the state's own courts or in the federal Courts sitting within its borders." See also, High on

Ex. Legal Rem. par. 356; 26 Cyc. 307; *Fry* v. *Commissioners. &c.*, 82 N. C. 304, 307; *McLendon* v. *Commissioners*, 71 N. C. 38; *Webb* v. *Beaufort*, 70 N. C. 307; *Anniston* v. *Hurt*, 140 Ala. 394; *White* v. *Decatur*, 119 Ala. 476; *Lyons* v. *Cooledge*, 89 Ill. 529, 535; *County of Cass* v. *Johnston*. 95 U. S. 360, 370; *same* v. *Jordan*, 95 U. S. 373; *U. S.* v. *Keokuk*, 6 Wall. 514, 517; *Weber* v. *Lee County*, 6 Wall. 210, 213; *Labette County Comm'rs* v. *Moulton*, 112 U. S. 217; *Riggs* v. *Johnson County*, 6 Wall. 166, 198.

(5)    Our answer to question 3 is in the negative. The respondent in his demurrers and answers to these petitions contends that the judgments rendered against John E. Cole, the former town treasurer, have not been kept alive by summoning this respondent into court as successor of said Cole, that this respondent has never been made a party to the record in the causes in which the judgments were rendered (Dem. 3, 4); and that said judgments have lapsed and become unenforceable against the town of West Greenwich or the respondent town treasurer, because the petitioners have failed to summon in this respondent, as a party defendant to said judgments. (Answer—"Second" par.)

The statute upon which the respondent attempts to base these contentions, being Gen. Laws R. I. 1909, Chap 283, § 13, is as follows: "Sec. 13. No action, suit or proceeding, commenced or pending by or against any officer, receiver, or trustee, in his capacity as such, shall abate in consequence of his death, or of his ceasing to hold his office, place, or trust, within one year thereafter; but at any time within one year thereafter his successor in the office, place, or trust may come in and take upon himself, or he may be summoned in to take upon himself, the prosecution or defence of such action, suit, or proceeding."

This statute has no application to the case at bar. The judgments, although in form, under the statutes, against the town treasurer named in the writs (John E. Cole) then in office, are, as we have above shown, judgments against the town in its corporate capacity; the record of the suits

is complete when judgment is entered and it cannot be said that the *suits* are *pending* simply because the judgments have not been paid. The abatement spoken of in the last quoted statute would have relation to a suit which, being commenced against a town treasurer, who goes out of office, while the suit is still pending and undetermined, has to be carried to judgment against his successor in office; in such case the successor must be summoned in or come in within a year, or the suit will abate. (*Saunders* v. *Pendleton*, 19 R. I. 659; *Tourjee* v. *Matteson*, 34 R. I. 270; *Whitford* v. *Palmer*, 38 R. I. 53.)

We find no cases cited by either party which in any way support the respondent's contentions in this regard, and we know of none in this State or elsewhere. We do find on the petitioners' brief certain cases which seem to us plainly to be hostile to the respondent's contentions.

We find numerous cases where it has been held that judgments against town officers, involving the rights, duties and obligations of towns, are binding upon their successors in office. A most notable case of this character is that of *New Orleans* v. *Citizens' Bank*, 167 U. S. 371, 388; in this case the bank was exempt by charter from certain taxes imposed by law upon other corporations; during a long period of years the taxing officers of the city of New Orleans and of the State of Louisiana saw fit, from time to time, but not continuously year by year, to attempt to impose upon this bank taxes from which it was exempt by law, and the bank brought various suits, for injunction against the collection of some taxes, and defended certain suits for the collection of other taxes; in all these cases final judgments were entered in favor of the bank in the state courts. It appeared as a matter of course, in considering all these proceedings in the state courts, extending from 1878 to 1892 wherein the state and city taxing officers were parties, that there were numerous changes in the personnel, and the point was urged that the judgments against prior holders of office were not to be taken as *res adjudicata* against the

successors in office of the prior defendants. On this point the U. S. Supreme Court (167 U. S. p. 388) said: "The first contention based upon the mere change in the person holding the particular office is without merit. It is not denied that the tax collectors and board of assessors who stood in judgment in the suit when the decisions were rendered were duly qualified and empowered to that end. And it is also not gainsaid that the successors in office of those officers who are defendants here are also duly empowered. The mere fact that there has been a change in the person holding the office does not destroy the effect of the thing adjudged." (Citing cases.) See also *Harshman* v. *Knox County*, 122 U. S. 306. This case was for a mandamus to compel the justices of the County Court of Knox County to levy a tax to pay a judgment against the county. The point was raised by counsel (p. 313) that the defendants, justices of the county court, were neither parties nor privies to the judgment, but the court said (pp. 319–320): "In such cases, the law which authorizes the issue of the bonds gives also the means of payment by taxation. The findings in the judgment on that point are conclusive. They bind the respondents in their official capacity, as well as the county itself, because, as was said in *Labette County Commissioners* v. *Moulton*, 112 U. S. 217, they are 'the legal representatives of the defendant in that judgment, as being the parties on whom the law has cast the duty of providing for its satisfaction. They are not strangers to it as being new parties on whom an original obligation is sought to be charged, but are bound by it as it stands without the right to question it, and under a legal duty to take those steps which the law has prescribed as the only mode of providing means for its payment.'" See also *Labette County Commissioners* v. *Moulton*, 112 U. S. 217, 221.

As to judgment against town officers in their official capacities being binding upon the town, and upon successors in the same office, see 23 Cyc. 1270 u. v.; *Town of Fulton* v. *Pomroy*, 111 Wis. 663 (highway); *Holsworth* v.

*O'Chander*, 49 Neb. 42 (overseer of highways in privity with predecessor in office); *State* v. *Kennedy*, 60 Neb. 300, 308 (police and fire commissioners); 1 Freeman on Judgments, Sec. 170, Sec. 178.

We are clearly of the opinion both upon reason and upon authority that the judgments set forth in the petitions in the case at bar are valid, binding and subsisting judgments in fact and in law against the town of West Greenwich which are enforceable at any time within twenty years next after the cause of actions accrued (*i. e.*, within twenty years after the judgments were entered, October 30, 1912, even if these proceedings by way of mandamus could be said to be within the Statute of Limitations, Gen. Laws R. I. (1909) Chap. 284, § 4, p. 1002, relating to actions of debt on judgments, which we do not decide).

We are further of opinion that said judgments, being valid, binding and subsisting judgments against the town of West Greenwich and against its former treasurer, John E. Cole, are equally valid and binding as against the respondent, Kettelle, Town Treasurer, by reason of his representative capacity as the town treasurer of said town in succession to said John E. Cole and in privity with him, and that the respondent, being the person "on whom the law has cast the duty of providing for its satisfaction" . . . "and under a legal duty to take those steps which the law has prescribed as the only mode of providing means for its payment," (*Harshman* v. *Knox County*, 122 U. S. 319, 320) is the very person against whom these proceedings should have been and were rightly taken; and that there is no authority for the respondent's position that anything should have been done by the petitioners, other than by making demand on him for payment, as they did, which was requisite as a condition precedent to the commencement of these proceedings; even without a demand we think the respondent as the financial officer of the town was bound to take notice of these judgments and to proceed to provide for their payment.

(6)     As to question 4 our answer, as shown above, is that the respondent was the proper party against whom to proceed; but the fact that he had not "sufficient of the money of such town" . . . "in his hands to satisfy and pay the judgment" etc., has an important bearing upon the nature of the relief which should have been asked and which should be granted. The petitioners prayed that the respondent be commanded *to pay* the judgments, and the court so ordered, apparently ignoring the admitted fact that the treasurer did not have "sufficient of the money of such town" with which to pay. Such being shown to be the fact the petitioners should thereupon have been required to amend their petitions by adding a prayer in the alternative that the treasurer should be commanded to proceed in accordance with the statute in such case provided (Sec. 13 above quoted) to "make application to any justice of the peace of such town" for a "warrant to the town sergeant of such town" etc., so that a tax should be levied. This is the plain intent of the law and it was error on the part of the trial court to proceed as it did and to decree as it did that the treasurer should pay.

Since there is here no dispute as to the facts, it is our opinion that the petitioners should be permitted and required to amend their petitions by adding the prayer above suggested; and thereupon this court will reverse the orders of the lower court in these cases, and will enter such orders as shall be proper commanding the respondent as town treasurer to proceed in accordance with the statute for the levy of a tax wherewith to pay these judgments, etc.

The petitioners have leave to present for the consideration of this court such orders for the amendments to the prayers of their petitions, and such orders for the writs of mandamus as shall be in accordance with this opinion on or before the twelfth day of May, 1919.

*Nathan B. Lewis*, for petitioner.
*Quinn & Kernan*, for respondents.